**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Zach Hillesheim,                                   Case No. 16-cv-2225 (MJD/TNL)

              Plaintiff,

v.                                                      **REPORT &**
                                                     **RECOMMENDATION**

Buzz Salons, LLC,

              Defendant.

---

Padraigin Browne, Browne Law LLC, 8530 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042 (for Plaintiff); and

Alyssa Kathryn Thibert Nelson and Kevin A. Velasquez, Blethen, Gage & Krause, PLLP, 100 Warren Street, Suite 400, Mankato, MN 56001 (for Defendant).

---

## I. INTRODUCTION

This matter is before the undersigned United States Magistrate Judge on Defendant Buzz Salons, LLC's ("Buzz Salons") Amended Motion to Dismiss (ECF No. 18). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Michael J. Davis, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 33.) A hearing was held. (ECF No. 35.) Padraigin Browne appeared on behalf of Plaintiff Zach Hillesheim ("Hillesheim") and Kevin A. Velasquez appeared on behalf of Buzz Salons.

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that the Amended Motion to Dismiss (ECF No. 18) be **GRANTED IN PART** and **DENIED IN PART**, and this matter be dismissed without prejudice.

## II. BACKGROUND

Hillesheim resides in Nicollet, Minnesota. (First Am. Compl. ¶ 8, ECF No. 17.) He is paralyzed below the waist, cannot walk, and uses a wheelchair for mobility. (First Am. Compl. ¶ 9.) Buzz Salons operates a hair salon known as "Baxter's Hair Shop" ("Baxter's") in Mankato, Minnesota. (First Am. Compl. ¶ 10.) Hillesheim frequently visits the Mankato area and has gone to Baxter's "multiple times to get haircuts." (First Am. Compl. ¶ 11.)

On March 22, 2016, Hillesheim attempted to patronize Baxter's. (First Am. Compl. ¶ 11.) When he tried to use the bathroom, "he found that the clear width of the doorway was reduced due to the presence of a large metal cabinet mounted on wheels that partially blocked the doorway." (First Am. Compl. ¶ 12.) It was difficult for Hillesheim to get through the doorway and he "risked damaging his wheelchair or scratching the doorway and the cabinet by doing so." (First Am. Compl. ¶ 12.) Hillesheim went to Baxter's for a haircut again in June. (Decl. of Amber Menke ¶ 13, ECF No. 11.)

On or about August 15, Hillesheim returned to Baxter's to get another haircut and "investigate [Buzz Salons'] claim that it had removed the large metal cabinet from blocking the bathroom and had hired an accessibility specialist to remove other architectural barriers from [Baxter's]." (First Am. Compl. ¶ 13.) During this visit,

Hillesheim "observed that the sales counter was well over [36] inches in height and contained no span at a maximum of [36] inches in height." (First Am. Compl. ¶ 13.) Upon information and belief, the sales counter was the same as when Hillesheim visited Baxter's in March. (First Am. Compl. ¶ 13.)

Hillesheim brings the instant lawsuit, alleging that the metal cabinet and service counter prevented him from accessing Baxter's "independently on a full and equal basis because of his disabilities." (First Am. Compl. ¶ 14; *see id.* ¶ 26.) Hillesheim asserts that Buzz Salons violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.* Hillesheim seeks declaratory and injunctive relief as well as payment of a civil penalty, damages, and attorney fees and expenses.

### III. MOTION TO DISMISS

Buzz Salons moves to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Buzz Salons contends that dismissal is warranted under Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction over Hillesheim's ADA claim as the barriers identified by Hillesheim have since been removed. Buzz Salons further contends that Hillesheim's MHRA claim should be dismissed for failure to state a claim. Alternatively, should the Court conclude that it lacks subject matter jurisdiction over Hillesheim's ADA claim, Buzz Salons requests that Hillesheim's MHRA claim be dismissed without prejudice because the Court no longer has original jurisdiction over the suit.

3

## A. Applicable Legal Standard

At the outset, the parties dispute the legal standard to be applied to Buzz Salons' motion. Buzz Salons asserts that it is bringing a factual attack under Rule 12(b)(1); the Court may consider matters outside the pleadings; and Hillesheim does not receive the benefits accorded to the non-moving party under a Rule 12(b)(6) analysis. (Def.'s Mem. in Supp. at 4-6, ECF No. 20; *see* Def.'s Reply at 9, ECF No. 31.) Hillesheim counters that Buzz Salons' motion is more properly evaluated under Rule 56 because it "relies heavily on evidence outside of the pleadings" and "the jurisdictional facts at the heart of [the] motion are intertwined with facts central to the merits of this dispute." (Pl.'s Mem. in Opp'n at 4, ECF No. 27.)

Challenges to the Court's subject matter jurisdiction under Rule 12(b)(1) can be facial or factual. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The distinction is significant because the nature of the attack dictates the appropriate legal standard. *Branson Label*, 793 F.3d at 914-15; *Osborn*, 918 F.2d at 729 n.6. "In a facial attack, the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label*, 793 F.3d at 914 (quotation omitted). "Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6) (internal citation omitted). "Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony

and affidavits, are considered." *Id.* at 914-15 (quotation omitted). As a result, with a factual attack, the nonmoving party does "not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Id.* at 915; *accord Osborn*, 918 F.2d at 729 n.6.

In *Osborn*, the Eighth Circuit Court of Appeals explained that "[t]he reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, is rooted in the unique nature of the jurisdictional question." 918 F.2d at 729 (quotation omitted). This is because "[j]urisdictional issues, whether they involve questions of law or fact, are for the court to decide." *Id.* While recognizing that an exception exists "in instances when the jurisdictional issue is so bound up with the merits that a full trial on the merits may be necessary to resolve the issue," *id.* at 730 (quotation omitted), the Eighth Circuit also expressed a preference for deciding jurisdictional questions at the outset due to the threshold-nature of the inquiry, *id.* at 729.

The argument advanced by Hillesheim has been rejected in two similar cases in this District involving the defendant's redress of ADA violations either prior to the commencement of or during litigation. *Smith v. Geneva Props. LP*, No. 16-cv-2735 (JRT/KMM), 2016 WL 7404744, at *2 n.2 (D. Minn. Nov. 29, 2016), *adopting report and recommendation*, 2016 WL 7404692 (D. Minn. Dec. 21, 2016); *Disability Support Alliance v. Geller Family Ltd. P'ship III*, 160 F. Supp. 3d 1133, 1137 (D. Minn. 2016). Like these courts, this Court concludes that Buzz Salons' motion is not premature; the appropriate analysis is under Rule 12(b)(1); and, given Buzz Salons' factual attack, such

analysis may properly take into account matters outside the pleadings without converting the motion into one for summary judgment. *See Osborn*, 918 F.2d at 729-30 & n.6; *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014); *see, e.g.*, *Smith*, 2016 WL 7404744, at *2 & n.2; *Disability Support Alliance*, 160 F. Supp. 3d at 1136, 1137.

### B. Buzz Salons' Factual Attack

Appended to the First Amended Complaint are photographs of the metal cabinet[1] and sales counter. (Exs. A, B to First Am. Compl., ECF Nos. 17-1, 17-2.) When this lawsuit was initially brought, Hillesheim's claims were based on the presence of the metal cabinet obstructing the bathroom's doorway. (Compl. ¶¶ 11-12, 26, ECF No. 1.) Buzz Salons moved to dismiss the initial Complaint, asserting that the metal cabinet had been moved and therefore Hillesheim's claims were moot. (*See generally* Mem. in Supp. of Def.'s Mot. to Dismiss, ECF No. 9.) With its motion, Buzz Salons included a declaration from Baxter's manager, stating that she had personally moved the metal cabinet the morning after she had been notified that there was an issue; the metal cabinet had been relocated to a different area of the salon, where it could remain permanently; and she had no intention of moving the metal cabinet back to its previous location. (Menke Decl. ¶¶ 2-9.) The declaration also included photographs documenting the metal cabinet's relocation. (Menke Decl. ¶¶ 6-8; Exs. 1, 2 to Menke Decl., ECF Nos. 11-1, 11-2.) Buzz Salons also included a declaration from counsel, stating that he communicated

---

[1] While this photograph is not specifically identified in the text of the First Amended Complaint, the same photograph was included with the initial Complaint, which only dealt with the metal cabinet. (*See* Compl., ECF No. 1; Exhibit A to Compl., ECF No. 1-1.)

with Hillesheim's then-counsel[2] three times, advising that the cabinet had been moved. (Decl. of Kevin Velasquez ¶¶ 2-5, ECF No. 10.)

About one week after Buzz Salon's first motion to dismiss was filed, Hillesheim returned to Baxter's to have his hair cut and investigate whether the metal cabinet had been moved. About another week after this visit and in response to Buzz Salons' first motion to dismiss, Hillesheim's then-counsel filed an amended complaint, the First Amended Complaint. The First Amended Complaint included the sales counter as well as the since-relocated metal cabinet.

Buzz Salons subsequently filed the instant Amended Motion to Dismiss. Similar to its first motion, Buzz Salons included another declaration from Baxter's manager. (Second Decl. of Amber Menke, ECF No. 21.) In her second declaration, Baxter's manager stated that an accessibility consultant had assessed Baxter's premises in July 2016, and one of the recommendations had been to make adjustments to the service counter. (Second Menke Decl. ¶¶ 4-7.) Baxter's manager stated that a decision had been made to replace the service counter prior to Hillesheim's August visit, but the new service counter had not yet been installed when Hillesheim returned in August. (Second Menke Decl. ¶¶ 7-8.) The new service counter was subsequently installed, and Baxter's manager included photos with her second declaration documenting the new service counter's height and related dimensions. (Second Menke Decl. ¶¶ 8-9; Ex. 4 to Second Menke Decl., ECF No. 21-1.) And again, similar to her first declaration, Baxter's

---

[2] Hillesheim was previously represented by Paul R. Hansmeier. Attorney Browne entered an appearance in this matter on September 13, 2016. (ECF No. 26.)

manager stated that she has no intention of making any adjustments to the height of the new service counter.  (Second Menke Decl. ¶ 11.)

### C. Mootness

Buzz Salons contends that this matter is moot because it has moved the metal cabinet and replaced the service counter and, therefore, "there is no injury that could be redressed by a favorable judicial decision."  (Def.'s Mem. in Supp. at 6.)  Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015); *Smith*, 2016 WL 7404744, at *2; *Disability Support Alliance*, 160 F. Supp. 3d at 1136. "'[S]tanding is an essential unchanging part of the case-or-controversy requirement.'" *Digital Recognition Network*, 803 F.3d at 956 (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "A plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to constitute a justiciable 'case or controversy' under Article III.  Otherwise, the case becomes moot." *Sawczyn*, 8 F. Supp. 3d at 1113 (citation omitted).  "If circumstances change after the suit begins so that the plaintiff no longer has anything to gain from the relief requested in the lawsuit, then the case becomes moot."  *Smith*, 2016 WL 7404744, at *2.  "[A] defendant's voluntary removal of alleged [architectural] barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).

But, "'[i]t is [also] well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality

of the practice. If it did, courts would be compelled to leave the defendant free to return to his old ways.'" *Sawczyn*, 8 F. Supp. 3d at 1113 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). "The defendant carries a 'heavy burden' of demonstrating not only that it has voluntary ceased the offending conduct but also that it is 'absolutely clear' the offending conduct 'could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189); *accord Smith*, 2016 WL 7404744, at *2.

## 1. Voluntary Cessation

Buzz Salons contends that it has voluntarily removed the barriers identified by Hillesheim. In the First Amended Complaint, Hillesheim contends that the metal cabinet and service counter do not comply with Department of Justice ADA Accessibility Guidelines implementing Title III of the ADA, including the 2010 ADA Standards for Accessible Design,[3] collectively referred to as the "ADAAG." *See* 28 C.F.R. Pt. 36, app. A; *McCune v. 628 Harvard Cameron, LLC*, No. 2:10-cv-0211-GEB-GGH, 2012 WL 5988880, at *3 (E.D. Cal. Nov. 29, 2012) (discussing history of guidelines); *see also Smith*, 2016 WL 7404744, at *3. "The ADAAG is a comprehensive set of structural guidelines that articulates detailed design requirements to accommodate persons with disabilities." *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014); *accord Oliver*, 654 F.3d at 905 (describing the ADAAG as "essentially an encyclopedia of design standards").

---

[3] 36 C.F.R. § 1191.1(a); 36 C.F.R. Pt. 1191, apps. B, D; *see also* at https://www.ada.gov/2010ADAstandards_index.htm.

### a.  Metal Cabinet

The ADAAG requires that accessible routes be provided, including doors, doorways, and gates providing user passage.  ADAAG §§ 206.1, .5.  "Within a building or facility, at least one door, doorway, or gate serving each room or space complying with these requirements shall comply with 404."  *Id.* § 206.5.2.  In relevant part, the ADAAG requires door openings to "provide a clear width of 32 inches . . . minimum."  *Id.* § 404.2.3.  According to Hillesheim, the placement of the metal cabinet "near the doorway of the customer bathroom reduced the clear width of the doorway to less than 32 inches, in violation of ADAAG 206.5.2 and 404.2.3."  (First Am. Compl. ¶ 26(a).)

Through the declaration of its manager, Buzz Salons has provided evidence that the metal cabinet has been moved and there are no longer any objects reducing the clear width of the doorway to the customer bathroom.  Hillesheim did not identify any other non-compliance issues with respect to the doorway.  *Cf. Sawczyn*, 8 F. Supp. 3d at 1114 (court could not conclude defendant's ATMs were fully compliant where evidence showed remedial measures did not address all alleged ADA violations with respect to ATMs).  As stated by Hillesheim himself, "[w]ithout the [cabinet]'s presence [he] could have used the bathroom without fearing damage to his wheelchair or [Buzz Salons'] property."  (Pl.'s Mem. in Opp'n at 1-2.)  Hillesheim conducted a site inspection of Buzz Salons' premises the day before responding to Buzz Salons' motion and, while still reviewing the evidence collected, Hillesheim has not identified any ongoing compliance issue with respect to the doorway leading into the customer bathroom since first being notified of the remediation in July 2016.  (Velasquez Decl. ¶ 3.)  *Cf. Smith*, 2016 WL

7404744, at *3-4 (court unable to conclude defendant had voluntarily ceased and completely remedied alleged offending parking lot where evidence did not address van-parking space requirements). In short, Hillesheim has not identified, and this Court cannot discern, any further relief this Court could order with respect to the now unobstructed doorway.

### b. Service Counter

The ADAAG also sets forth requirements for service counters. ADAAG § 904.1. Service counters are required to comply with one of two approaches, the parallel approach or the forward approach. *Id.* § 904.4. Under either approach, "[t]he accessible portion of the counter top shall extend the same depth as the . . . service counter." *Id.* According to Hillesheim, Buzz Salons' previous service counter did not comply with either approach, and "lack[ed] an accessible portion in violation of ADAAG 904.4." (First Am. Compl. ¶ 26(b).) Buzz Salons asserts that the newly installed service counter is compliant with the parallel approach. (Second Menke Decl. ¶ 8.)

The parallel approach requires "[a] portion of the counter surface that is 36 inches . . . long minimum and 36 inches . . . high maximum above the finish floor." ADAAG § 904.4.1. Further, "[a] clear floor or ground space complying with 305 shall be positioned for a parallel approach adjacent to the 36 inch . . . minimum length of the counter." *Id.* The ADAAG additionally provides that this clear floor or ground space should be "30 inches . . . minimum by 48 inches . . . minimum." *Id.* §§ 305.1, .3, .5. In her second declaration, Baxter's manager has provided photographs showing the dimensions of the new service counter. The service counter surface is at least 38 inches

11

long, thereby exceeding the 36-inch minimum.  (Ex. 4 to Second Menke Decl. at 2, 4.)
The service counter is approximately 30 inches high, well under the 36-inch maximum.
(Ex. 4 to Second Menke Decl. at 1, 3.)   The depth of the entire counter top is
approximately 23.5 inches with no differentiation between the accessible portion and the
remainder of the counter top.  (Ex. 4 to Second Menke Decl. at 6; *see* Ex. 4 to Second
Menke Decl. at 1, 3.)  And, the clear floor or ground space permitting a parallel approach
to the service counter exceeds the 30-by-48-inch minimum, measuring more than 36 by
49 inches.  (Ex. 4 to Second Menke Decl. at 5.)

It is Hillesheim's positon that he "could not practically use" the prior service
counter "because its height was excessive."  (Pl.'s Mem. in Opp'n at 2.)  Buzz Salons has
remedied this violation by installing a new service counter with a height approximately
six inches below the ADAAG's maximum.  Buzz Salons' evidence also shows that the
new service counter is fully compliant not only with the ADAAG's height requirement,
but also the length, depth, and clear-floor/ground-space requirements.  Like the doorway,
Hillesheim has not identified any ongoing compliance issue with respect to the new
service counter.[4]  *Cf. Smith*, 2016 WL 7404744, at *3-4.  And, again, Hillesheim has not
identified, and this Court cannot discern, any further relief this Court could order with
respect to the since-replaced service counter.

---

[4] Hillesheim asserts that he was given short notice of Buzz Salon's remediation.  (*See, e.g.*, Pl.'s Mem. in Opp'n at 17.)  Notably, Hillesheim did not subsequently seek leave of Court to include evidence of continued noncompliance with respect to the service counter or identify any such remaining noncompliance at the hearing.

### 2.  Expectation of Reoccurrence

As stated above, in addition to voluntary cessation, Buzz Salons must also show the offending conduct could not reasonably be expected to recur.  In arguing that Buzz Salons has not met its burden, Hillesheim contends that Buzz Salons must establish that the entire premises is ADA-compliant.  Hillesheim asserts that Buzz Salon's "evidence demonstrates that an accessibility specialist audited [Baxter's] and provided barrier removal suggestions," and "[Buzz Salons'] filing does not disclose what those suggestions were, much less indicate whether [Buzz Salons] elected to implement those suggestions."  (Pl.'s Mem. in Opp'n at 10.)  According to Hillesheim, this amounts to non-acknowledgment.  (Pl.'s Mem. in Opp'n at 11.)  Hillesheim additionally asserts that Buzz Salons has not presented "any evidence that it attempted to maintain an ADA-compliant premises prior to this suit being brought"; Buzz Salons has ongoing non-compliance in the form of a freestanding toilet-paper dispenser; and there is no written policy aimed at ensuring compliance.  (Pl.'s Mem. in Opp'n at 10-11.)

### a.  Continued ADA-Compliance with Metal Cabinet & Service Counter

Based on the evidence submitted, the Court is persuaded that Buzz Salons will remain compliant with the ADA and future violations are not reasonably expected to reoccur.  There were no alleged ADA violations that Buzz Salons did not address.  In *Sawczyn*, the declaration purporting to show mootness through ADA compliance addressed headphone-jack, voice-guidance, and software issues for the defendant's ATMs, but maintained that the ATMs "had proper decals and Braille lettering."  8 F.

13

Supp. 3d at 1114 (quotation omitted).  Yet, the plaintiff had alleged that one of the ATMs "lacked proper tactile symbols."  *Id.*  Because the defendant did "not concede th[e] alleged violation," "describe any measures taken to correct it," or "address whether [the defendant's] other ATMs ha[d] proper tactile symbols," the district court was "left unsure whether [the defendant's] ATMs [we]re fully compliant or just ha[d] functioning software and voice-guidance features."  *Id.*  Unlike in *Sawczyn*, within approximately two months from the filing of this lawsuit, Buzz Salons remedied the violations identified in the First Amended Complaint and had Baxter's evaluated by an accessibility specialist. The metal cabinet was moved less than 24 hours after Baxter's manager was notified of the problem, well before even the filing of the First Amended Complaint.  Whether Baxter's became aware of the service-counter issues as a result of the accessibility specialist's assessment, which occurred towards the end of July, or the filing of the First Amended Complaint, which was filed towards the end of August, the new service counter was installed prior to the filing of Buzz Salons' amended motion to dismiss in the first part of September.  The uncontroverted evidence submitted by Buzz Salons establishes that both the bathroom doorway and the service counter are now ADA-compliant, and thus the success of these efforts.  *Cf. id.* (unclear from record whether defendant's efforts to bring its ATMs into compliance were successful).

Buzz Salons changed its position to come into compliance with the ADA and did so in short order once made aware of the violations.  While litigation may have been the impetus, "the Eighth Circuit and other appellate courts have recognized, private litigation serves as an important means to enforce the public policy behind civil rights statutes such

14

as the ADA and serial litigants serve a valuable purpose as private attorneys generals ensuring that the ADA yields its promises of equal access to disabled persons." *Adams v. Capko, Capko & Griffith, LLC*, No. 6:15-CV-3346-MDH, 2015 WL 7738374, at *3 (W.D. Mo. Nov. 30, 2015) (citing cases). Buzz Salons' retention of an accessibility specialist and efforts to address other potential issues not identified in the First Amended Complaint demonstrate a mindset of compliance rather than simply an effort "to defeat injunctive relief by protestations of repentance and reform." *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952); *cf. Sawczyn*, 8 F. Supp. 3d at 1114. Similarly, although it would be prudent for Baxter's to have a policy regarding ADA compliance, the absence of such a policy alone does not, as Hillesheim contends, "seriously undermine[]a finding of mootness" when considering the uncontroverted evidence that the conduct complained of has been remedied. (Pl.'s Mem. in Supp. at 11.) *See Turner v. Anand*, No. 14-cv-01147-BAS(PGL), 2015 WL 4474671, at *7 (S.D. Cal. July 21, 2015) (defendant did not have an access policy in place prior to litigation and therefore had no history of violating such a policy, but developed one in response to litigation). *But see Sawczyn*, 8 F. Supp. 3d at 1114-15.

In sum, Buzz Salons' evidence consists of more than just the words of Baxter's manager that she does not intend on moving the metal cabinet back to its previous position or changing the new service counter—it consists of prompt actions that, along with a good dose of commence sense, support with absolute clarity that the offending conduct will not reasonably be expected to occur again.

**b. Not-Yet-Disclosed Violations & Toilet-Paper Dispenser**

Turning to Hillesheim's arguments regarding the purported not-yet-disclosed ADA violations and the toilet-paper dispenser, the Court has serious concerns over what appears to be a moving litigation target. Initially, Hillesheim's lawsuit was based on only the metal cabinet by the bathroom doorway. After being notified that this issue was remedied, Hillesheim returned to Baxter's for a haircut and to inspect the removal of the metal cabinet. Following this inspection, Hillesheim filed a First Amended Complaint, adding allegations regarding the service counter. The Court finds it difficult to believe Hillesheim did not encounter the non-compliant service counter during the March visit or his subsequent visit in June prior to the filing of the initial complaint. In fact, Hillesheim himself stated as much in the First Amended Complaint. Now, having inspected the new service counter, Hillesheim contends that the bathroom's freestanding toilet-paper dispenser is non-compliant. Hillesheim's memorandum also hints at more to come: "Plaintiff is entitled to take discovery into why removal of the barriers Plaintiff *identifies as it reviews evidence from its site inspection* is not readily achievable." (Pl.'s Mem. in Opp'n at 7-8 (emphasis added); *see* Pl.'s Mem. in Opp'n at 17.) Under these circumstances, Hillesheim's identification of another purported ADA violation and suggestion of additional violations say less about Buzz Salons and whether the offending conduct at issue is likely to recur and more about Hillesheim and a litigation strategy designed to draw out these proceedings.

i.    *Steger*

The Court recognizes that, in *Steger v. Franco, Inc.*, the Eighth Circuit Court of Appeals held that a blind individual had *standing* to seek relief for all ADA violations in the defendant's building related to his disability.  228 F.3d 889, 893-94 (8th Cir. 2000). In *Steger*, the blind individual was patronizing a café located in a larger building.  *Id.* at 891.  "Before leaving the café, [the individual] entered the [building's] common area to use the first floor men's restroom."  *Id.*  The individual "asked for and was given directions to the restroom, but was unable to locate it because the restroom was not marked with raised lettering, braille, or other signage that would identify it to a blind person."  *Id.* at 891-92.  The blind individual was one of several plaintiffs that subsequently sued to bring the building into compliance.  *Id.* at 891.

At a preliminary-injunction hearing approximately two years after commencement of the suit, the plaintiffs' expert testified that she had toured the building approximately eight months after the complaint was filed.  *Id.* at 892.  The expert testified that, while "the signage at the first-floor men's restroom was ADA-compliant," there were "numerous structural barriers within the [building] that she concluded violated the ADA." *Id.*  In relevant part, the district court subsequently dismissed the blind individual's claim for lack of standing, "concluding that although he was injured, his specific injury had been redressed because the signage at the first-floor men's restroom currently complied with the ADA."  *Id.*

On appeal, the Eighth Circuit agreed that the blind individual had suffered an injury-in-fact, but reversed on redressability.  *Id.* at 893.  The Eighth Circuit rejected the

defendant's argument that the redressability of the blind individual's injury was limited to the signage at the first-floor men's restroom.  *Id.*  The Eighth Circuit held that the blind individual had *standing* to seek relief for any ADA violations in the building affecting his disability, regardless of whether he had encountered the particular barrier.  *Id.* at 893-94. To hold otherwise, the Eighth Circuit reasoned, would result in "piecemeal compliance" where "numerous blind plaintiffs, each injured by a different barrier, would have to seek injunctive relief as to the particular barrier encountered until all barriers had been removed.  This not only would be inefficient, but impractical."  *Id.* at 894.

Buzz Salons correctly points out that *Steger* "speaks to a plaintiff's *ability* to sue," not mootness.  (Def.'s Reply at 5.)  "The Constitution's case-or-controversy limitation on federal judicial authority,  Art. III, § 2, underpins both . . . standing and . . . mootness jurisprudence . . . ."  *Friends of the Earth*, 528 U.S. at 180.  In relying on *Steger*, Hillesheim has conflated standing with mootness, a confusion the Supreme Court has described as "understandable, given . . . [its] repeated statements that the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Id.* at 189 (quotation omitted).  The inquiry here is not whether Hillesheim has standing to bring this lawsuit as it was in *Steger*, but whether there is anything left for the Court to address at all.  *See id.* at 180-81, 190-91; *cf. Disability Support Alliance*, 160 F. Supp. 3d at 1138.  Furthermore, even in the appropriate context, "*Steger* does not confer standing [on plaintiffs] to conduct a site

inspection so that they may demand removal of the barriers they discover during that site inspection." *Disability Support Alliance*, 160 F. Supp. 3d at 1138.

### ii.    Toilet-Paper Dispenser

As an initial matter, the Court questions whether the issue of the freestanding toilet-paper dispenser is properly before this Court. *See Smith*, 2016 WL 7404744, at *3-4; *Davis v. Queen Nelly, LLC*, 16-cv-2553 (PJS/SER), 2016 WL 5868066, at *2 (D. Minn. Oct. 6, 2016). Hillesheim has not moved for leave to file a second amended complaint to include these allegations in this lawsuit. The Court also questions what bearing the toilet-paper dispenser has on whether the offending conduct—the partially blocked doorway and the non-compliant service counter—is reasonably expected to recur. Nevertheless, because a factual attack on the Court's subject-matter jurisdiction permits the consideration of evidence outside of the pleadings, the Court will assume for purposes of this motion only that the purportedly non-compliant, freestanding toilet-paper dispenser is somehow evidence showing that the offending conduct is reasonably expected to recur.

Even with this assumption, however, Hillesheim's argument misses the mark. Rather, the purported issues with the toilet-paper dispenser actually support Buzz Salons' commitment to ADA compliance. While there appears to be a disagreement between the parties as to whether the freestanding toilet-paper dispenser actually complied with the ADA, Buzz Salons went ahead and replaced it with a wall-mounted, ADA-compliant dispenser after Hillesheim contended the prior dispenser was not compliant.

Hillesheim does not identify how the freestanding toilet-paper dispenser was noncompliant, stating only that Baxter's "bathroom lacked an accessible toilet paper dispenser." (Decl. of Peter Hansmeier ¶ 2, ECF No. 30; *see* Pl.'s Mem. in Opp'n at 2, 7, 12.) Under the ADAAG, toilet-paper dispensers "shall be 7 inches . . . minimum and 9 inches . . . maximum in front of the water closet measured to the centerline of the dispenser." ADAAG § 604.7. "The outlet of the dispenser shall be 15 inches . . . minimum and 48 inches . . . maximum above the finish floor and shall not be located behind grab bars." *Id.* The dispenser shall also "not be of a type that controls delivery or that does not allow continuous paper flow." *Id.* Baxter's manager has submitted a third declaration,[5] again accompanied by photographs, showing the wall-mounted dispenser. (Third Decl. of Amber Menke, ECF No. 32; Ex. 5 to Third Menke Decl., ECF Nos. 32-1 through 32-4.) This declaration and the pictures show that the centerline of the wall-mounted, toilet-paper dispenser is approximately eight inches in front of the toilet, which is between the seven-inch minimum and nine-inch maximum set forth by the ADAAG; the outlet of the dispenser is likewise situated between the ADAAG's 15-inch minimum and 48-inch maximum; the dispenser is located below the grab bars, not behind them; and there is nothing controlling the delivery or continuous flow of toilet paper. (Third Menke Decl. ¶¶ 9-10; Ex. 5 to Third Menke Decl.) At the hearing, Hillesheim's counsel even acknowledged that the toilet-paper dispenser was likely moot given the permanent installation.

---

[5] At the hearing, Hillesheim's counsel objected to the declaration to the extent it contained hearsay regarding the accessibility specialist's statements.

### 3. Conclusion

Hillesheim's ADA claim sought injunctive relief to bring the metal cabinet and service counter into compliance. These items are now in compliance and Hillesheim no longer has anything to gain from a favorable resolution of his ADA claim. *See Davis*, 2016 WL 5868066, at *1 ("A plaintiff may recover only injunctive relief—and not damages—under Title III of the ADA."). The Court finds that Buzz Salons has met its burden to show that it voluntarily ceased the offending conduct and such conduct is not reasonably be expected to recur. Accordingly, the Court concludes that this matter is moot and recommends that Buzz Salons' motion be granted in part for lack of subject matter jurisdiction over Hillesheim's ADA claim.

### D. MHRA Claim

In the First Amended Complaint, Hillesheim maintained that this Court could exercise supplemental jurisdiction over the non-federal MHRA claim because original jurisdiction existed over the federal ADA claim. (First Am. Compl. ¶ 6.) "Supplemental jurisdiction requires at least one claim within the district court's original jurisdiction." *City of Kansas City v. Yarco Co.*, 625 F.3d 1038, 1041 (8th Cir. 2010). Because there is no subject matter jurisdiction over Hillesheim's ADA claim, there can be no supplemental jurisdiction over Hillesheim's MHRA claim. *Disability Support Alliance*, 160 F. Supp. 3d at 1139; *see Hillesheim v. Casey's Retail Co.*, No. 16-cv-0061 (PJS/FLN), 2016 WL 3676164, at *1 (D. Minn. July 6, 2016).

21

### E.  Attorney Fees & Costs

Lastly, Buzz Salons seeks an award of its attorney fees and expenses under the ADA as a prevailing party and 28 U.S.C. § 1927.

### 1.  ADA

Under the ADA, the Court has the discretion to grant reasonable attorney fees and costs to the prevailing party.  42 U.S.C. § 12205 ("[T]he court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs.").  "A prevailing defendant in an ADA case is entitled to attorney fees only in very narrow circumstances."  *Quasius v. Schwan Food Co.*, No. 08-cv-575 (JNE/JJG), 2010 WL 3218591, at *1 (D. Minn. Aug. 13, 2010) (quotation omitted); *accord Equal Emp't Opportunity Comm'n v. Hibbing Taconite Co.*, 740 F. Supp. 2d 1052, 1055 (D. Minn. 2010).  "'[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.'"  *Quasius*, 2010 WL 3218591, at *1 (alteration in original) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)); *accord Steelman v. Delano*, No. 4:12-CV-00134 (CEJ), 2012 WL 5616156, at *3 (E.D. Mo. Nov. 15, 2012).

Should the Court grant its motion to dismiss, Buzz Salons contends that it is the prevailing party and entitled to attorney fees and costs.  Buzz Salons also contends that, "upon removal of the cabinet from the bathroom entrance, . . . [Hillesheim's] claims related to the mental cabinet became frivolous, unreasonable, vexatious, and groundless

*ab initio*." (Def.'s Mem. in Supp. at 13-14.)  Buzz Salons makes a similar argument with respect to the service counter.

Despite the fact that the Court has recommended that Buzz Salons' motion be granted on grounds that this matter is moot, it does not necessarily follow that Buzz Salons is a prevailing party.  In *Kohler v. Bed Bath & Beyond of Ca., LLC*, the Ninth Circuit Court of Appeals reversed an award of attorney fees under § 12205 to a defendant who had voluntarily remediated a barrier.  780 F.3d 1260, 1267 (9th Cir. 2015).  The appellate court concluded that "resolution of a claim via the mooting of any possible relief does not make [the defendant] a 'prevailing party' entitled to fees, as there is no 'judicially sanctioned change in the legal relationship of the parties.'"  *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001)).  The same is true here; the mootness of Hillesheim's ADA claims does not change the legal relationship of the parties.  *See id.*

But, even if Buzz Salons were deemed to be the prevailing party, the Court cannot say that this suit was frivolous, unreasonable, or groundless at the outset or that it became so when Hillesheim continued to litigate after Buzz Salons asserted this matter was moot due to its voluntary remediation.  As Hillesheim points out, "[a] plaintiff is not required to drop his claims when a defendant alleges a voluntary change in conduct," and it is not unreasonable for a plaintiff to hold a defendant to its burden to prove that the matter is actually moot.  (Pl.'s Mem. in Opp'n at 14.)  *See Smith*, 2016 WL 7404744, at *2; *Sawczyn*, 8 F. Supp. 3d at 1113.  Accordingly, the Court concludes that the circumstances

of this case do not fit within the narrow circumstances entitling a defendant to attorney fees and costs under the ADA.

### 2. 28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Sanctions under § 1927 are appropriate "when an attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (quotation omitted).  For the same reason just discussed—namely, that a plaintiff is not required to capitulate to a defendant's assertion of mootness—the Court likewise concludes that attorney fees and costs are not appropriate under § 1927.  Hillesheim correctly points out that Buzz Salons did "not challenge[] the existence of the barriers alleged," but sought dismissal on grounds that its remediation of those barriers rendered the matter moot.  (Pl.'s Mem. in Opp'n at 16.)  Although ultimately unsuccessful, Hillesheim's counsel did not multiple these proceedings unreasonably or vexatiously in opposing Buzz Salons' motion on the basis that Buzz Salons had not met its burden to show that this matter was moot.

Accordingly, the Court recommends that Buzz Salons' motion be denied to the extent that it seeks an award of attorney fees and costs.

## IV. RECOMMENDATION

Based upon the file, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Amended Motion to Dismiss (ECF No. 18) be **GRANTED IN PART** and **DENIED IN PART**.

2. This matter **BE DISMISSED WITHOUT PREJUDICE**.

Dated: June___19___, 2017                                   *s/ Tony N. Leung*
                                                           Tony N. Leung
                                                           United States Magistrate Judge
                                                           for the District of Minnesota


                                                           *Hillesheim v. Buzz Salons*
                                                           Case No. 16-cv-2225 (MJD/TNL)


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).